UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| QUICKIE MANUFACTURING CORP., | ) | |
| | ) | |
| Plaintiff, | ) | 04-2229 |
| | ) | |
| v. | ) | |
| | ) | |
| THE LIBMAN COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

ORDER ON MOTIONS FOR SUMMARY JUDGMENT

The plaintiff, Quickie Manufacturing Corp. ("Quickie"), manufactures and sells mops, brooms and other cleaning tools.  The defendant, The Libman Company ("Libman"), also manufactures and sells mops, brooms and other cleaning implements.

Quickie holds a patent ("the '635 patent") on a design for a butterfly sponge mop with an abrasive surface ("scrubber") attachment; the patent is entitled  "Sponge Mop Attachment." Quickie alleges that Libman's Gator Mops infringe at least Claims 37 and 38 of the '635 patent.

The court has previously construed the disputed claim terms [68].  Quickie has now filed a motion for partial summary judgment [71].  Libman has filed its own motion for summary judgment [73].  The parties have filed their responses and replies.  For the following reasons, both motions are denied.

BACKGROUND

In 1950, Peter Vosbikian patented a butterfly sponge mop.  Over the years, a number of improvements were added and patented.  One of those improvements added the scrubber to the front of the mop.  Quickie and/or Vosbikian obtained patents on several versions of butterfly sponge mops with scrubbers.  The various scrubber designs and attachments were sometimes awkward to use, and Quickie continued to improve on the idea.  The '635 patent is a reissue patent, one in a series of reissue patents that expanded the scope of the original patent's coverage.

Quickie claims that the undisputed facts show infringement.  Libman claims the facts prove non-infringement.  Libman also claims that the undisputed facts show the '635 patent is unenforceable due to inequitable conduct, which Quickie denies.

ANALYSIS

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Any

discrepancies in the factual record should be evaluated in the nonmovant's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)).  The party moving for summary judgment must show the lack of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson*, 477 U.S. at 248.

## I.  Unenforceability

Libman has asserted – as a counterclaim and an affirmative defense – that the patent is unenforceable due to inequitable conduct.  Libman contends that Quickie deceived the United States Patent and Trademark Office ("USPTO") by failing to disclose in its patent application the existence of nine previously issued patents.

Quickie has moved for summary judgment on this issue.  Quickie does not believe that the prior art from the nine patents is material,[1] but bases its motion on Libman's failure to show that the '635 patent inventors and/or their attorney (1) were aware of the prior art; or (2) had an intent to deceive.

A patent applicant has a duty to prosecute the patent application "with candor, good faith, and honesty."  *Nilssen v. Osram Sylvania, Inc.*, 504 F.3d 1223, 1229 (Fed. Cir. 2007).  A breach of this duty constitutes inequitable conduct.  *Nilssen*, 504 F.3d at 1229.  The party claiming inequitable conduct must show, by clear and convincing evidence, that the patent applicant acted with intent to deceive the USPTO by misrepresenting or failing to disclose material information.  *Nilssen*, 504 F.3d at 1229.  "Materiality and intent to mislead are questions of fact."  *Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc.*, 326 F.3d 1226, 1234 (Fed. Cir. 2003).

Materiality is weighed against intent to determine whether inequitable conduct has been established.  *Bristol-Myers*, 326 F.3d at 1234.  "When balanced against high materiality, the showing of intent can be proportionally less."  *Bristol-Myers*, 326 F.3d at 1234 (*citing Brasseler, U.S.A. I., L.P. v. Stryker Sales Corp.*, 267 F.3d 1370, 1381 (Fed. Cir. 2001)).  The parties have not adequately argued the issue of materiality, so the court cannot determine how to weigh materiality against intent.

However, even high materiality "does not *presume* intent, which is a separate and essential component of inequitable conduct."  *GFI, Inc. v. Franklin Corp.*, 265 F.3d 1268, 1274 (Fed. Cir. 2001) (emphasis added).   Intent is often inferred from facts showing that the applicant knew, or should have known, that the information could be material to the PTO's consideration of the patent.  *Bristol-Myers*, 326 F.3d at 1239.

----

[1] Prior art is material when it is not cumulative, and when it establishes – by itself or with other information – a *prima facie* case of unpatentability of a claim, or it refutes or is inconsistent with the applicant's argument as to patentability.  *Impax Labs, Inc. v. Aventis Pharm., Inc.*, 468 F.3d 1366, 1374 (Fed. Cir. 2006).

Libman contends that actual knowledge is not required to show intent; the '635 patent applicants "should have known" of the prior art. That is an inaccurate statement of the law. In *Nordberg, Inc. v. Telsmith, Inc.*, 82 F.3d 394, 397 (Fed. Cir. 1996), the Federal Circuit explained the "should have known" standard. Actual knowledge of the prior art must be proved. *Nordberg*, 82 F.3d at 397. Once actual knowledge of the prior art is established, "'it may be found that the applicant *should have known*" of th[e] materiality.'" *Nordberg*, 82 F.3d at 397 (*quoting FMC Corp. v. Manitowoc Co.*, 835 F.2d 1411, 1415 (Fed. Cir. 1987)) (emphasis added).

The patent applicants and Quickie's patent prosecution attorney have testified that they did not know of the prior art. Quickie's president disclaimed actual knowledge of those patents, but at least some of the undisclosed patents were granted to his father, Quickie's founder. In view of that evidence, the trier of fact must assess the credibility of the witnesses.

## II. Infringement

"A finding of patent infringement is a two-step process: first, the court determines the meaning of the disputed claim terms, then the accused device is compared to the claims as construed to determine infringement." *Acumed LLC v. Stryker Corp.*, 483 F.3d 800, 804 (Fed. Cir. 2007) (*citing Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995)). Infringement is a question of fact. *Frank's Casing Crew & Rental Tools, Inc. v. Weatherford Int'l, Inc.*, 389 F.3d 1370, 1376 (Fed. Cir. 2004). The court can resolve the issue on summary judgment only if "no reasonable jury could find that every limitation recited in the properly construed claim either is or is not found in the accused device." *Frank's*, 389 F.3d at 1376 (*quoting Gart v. Logitech, Inc.*, 254 F.3d 1334, 1339 (Fed. Cir. 2001)). Stated another way, the absence from the accused product of one limitation in the claim means there is no literal infringement of that claim.

Infringement may also be shown under the doctrine of equivalents, which "requires a showing that the difference between the claimed invention and the accused product [i]s insubstantial." *Stumbo v. Eastman Outdoors, Inc.*, 508 F.3d 1358, 1364 (Fed. Cir. 2007).

Quickie argues that Libman's Gator Mop literally infringes Claims 37 and 38 of the '635 patent. Libman argues that the Gator Mop does not infringe Claims 37 and 38, either literally or under the doctrine of equivalents.

### A. Claim 37[2]

Claim 37 of the '635 patent reads, in pertinent part:

---

[2] Claims 37 and 38 were replicated in their entirety in the court's claim construction order. In the interest of brevity, only the terms relevant to the parties' summary judgment arguments are shown here.

A butterfly sponge mop with a sponge, a sponge support member with two side surfaces, and a sponge supporting base plate, said mop further comprising:
     (a) *cleaning implement support means* comprising:
             . . .

        (3) the rearward section having at least two *planar surfaces* positioned in nestled contact with the side surfaces of the sponge support member;
             . . .

     (b) dual squeeze arm means which contact and pivot the sponge supporting base plate, *each arm of the dual squeeze arm means extending passed one of said planar surfaces of said cleaning implement support means.*  (Emphasis added.)

Quickie argues that Libman has infringed several of the limitations in Claim 37.  Libman contends that the Gator Mop does not infringe Claim 37(b).   The court has construed the term "extending passed" to mean "entering."  The court construed "cleaning implement support means" to mean "a removable support for a cleaning implement."   Libman argues that its dual squeeze arm means do not enter the planar surfaces of the removable support for a cleaning implement – in this case, the removable support for the scrubber attachment.

Quickie's expert states that the Gator Mop's dual squeeze arms extend in a path beyond the external side surfaces of the rearward section of the cleaning implement support means.  "Extending in a path beyond" was the construction urged by Quickie, and rejected by the court.  Thus, the expert's opinion is not persuasive.  Figure 11 of Quickie's motion depicts the planar surface of Libman's cleaning implement support means, with the caption, "The ends of the squeeze arms extend past and enter a plane (shown by the blue dashed line) defined by the planar surface of the cleaning implement support means."  In other words, Quickie argues that the planar surface includes a space where the surface *could* be, if continued or extended along that plane.  However, Claim 37 clearly specifies that each arm enters one of the planar *surfaces*; it says nothing about a plane extending beyond those surfaces.  Therefore, Quickie's motion for summary judgment of literal infringement on Claim 37 is denied.

Libman moves for summary judgment on Claim 37, arguing that its Gator Mops do not infringe, either literally or equivalently.  For the reasons discussed above, the court agrees that there is no literal infringement of Claim 37 by the Gator Mop.

However, whether there is infringement under the doctrine of equivalents is a closer call.  "A finding of infringement under the doctrine of equivalents requires a showing that the difference between the claimed invention and the accused product was insubstantial."  *Stumbo*, 508 F.3d at 1364.  Libman contends that the '635 patent clearly excludes attachment of the abrasive surface by means of screws, nuts or bolts, in favor of the squeeze arms.  However, the abrasive surface itself – that is, Libman's brush – is not screwed into the Gator Mop.  Rather, the cleaning implement support means is screwed into the mop head (or sponge support member),

and the detachable brush is slid into a groove in the cleaning implement support means.[3]  The trier of fact must determine whether this difference is insubstantial.  Libman's motion for summary judgment of non-infringement on Claim 37 is denied.

B.  Claim 38

Claim 38 reads, in pertinent part:

A butterfly sponge mop *comprising:*

. . .

     (b) *a mop head of compact, unitary single piece construction . . .*

. . .

Quickie argues that the Gator Mops literally infringe each and every limitation in Claim 38.  As noted above, the absence from the accused product of one limitation in the claim means there is no literal infringement of that claim. *See Frank's*, 389 F.3d at 1376.  Libman argues that the Gator Mop does not have a mop head of compact, unitary single piece construction as specified in Claim 38(b).

The court construed the phrase "mop head of compact unitary, single piece construction" to mean "one-piece support for cleaning implements."  In its order on claim construction, the court noted that the patent description identified the cleaning implements as the sponge and the abrasive surface (in this case, the brush). Consequently, Libman argues that its Gator Mops do not have a one-piece support for cleaning implements; the sponge is supported by the mop head, and the abrasive surface – the brush – is supported by a separate support means that is screwed into the mop head.

Quickie argues that Libman clearly has a one-piece support for a cleaning implement to which a second piece, the cleaning implement support means, is attached.  Quickie's characterization of a two-piece design is contrary to its claim limitation of a one-piece support for cleaning implements.  Therefore, Quickie's motion for summary judgment of literal infringement on Claim 38 is denied.

Libman moves for summary judgment on Claim 38, arguing that its Gator Mops do not infringe, either literally or equivalently.  For the reasons discussed above, the court agrees that there is no literal infringement of Claim 38 by the Gator Mop.

---

[3] Quickie points out the two-piece nature of the abrasive surface means in its argument for infringement of Claim 38.  "[T]he abrasive surface means is comprised of two pieces – the abrasive brush and a bracket that attaches the brush to the mop head[.]"  Quickie Br. at 10, d/e 76. *See also* Libman Mot. at 18, Fig. 9, d/e 73 (the "mop attachment is itself an assembly composed of multiple components, a brush and a bracket, that is attached to the mop head.").  The court cannot ignore the relevance of this description to Claim 37.

5

But, again, whether there is infringement under the doctrine of equivalents is not as clear. "A finding of infringement under the doctrine of equivalents requires a showing that the difference between the claimed invention and the accused product was insubstantial." *Stumbo*, 508 F.3d at 1364. Libman argues that its multi-piece embodiment cannot be the equivalent of "compact unitary single-piece construction." In support for its argument Libman cites *Vehicular Tech. Corp. v. Titan Wheel Int'l, Inc.*, 212 F.3d 1377, 1382 (Fed. Cir. 2000) ("the range of equivalents cannot be divorced from the scope of the claims"). However, in *Vehicular Tech.*, the Federal Circuit distinguished two terms of art in patent law: "consisting of" (as used in that case) and "comprising" (as used in this case). *See Vehicular Tech.*, 212 F.3d at 1382. "Consisting of" means "I claim what follows and nothing else" whereas "comprising" means "I claim at least what follows and potentially more." *Vehicular Tech.*, 212 F.3d at 1383. Thus, by using the term "comprising," Quickie claimed a one-piece support "and potentially more." Libman's multi-piece assembly is screwed together to function as one piece. Whether that difference is insubstantial must be determined by the trier of fact.

In sum, this case presents genuine issues of material fact for trial. A jury may find the patent applicants' conduct inequitable, rendering the patent unenforceable. If it is enforceable, Libman's Gator Mop may be found to infringe Claims 37 and/or 38 under the doctrine of equivalents.

## CONCLUSION

For the foregoing reasons, Quickie's motion for summary judgment [71] is denied. Libman's motion for summary judgment [73] is also denied. A final pretrial conference is scheduled for March 6, 2008 at 1:30 p.m. by personal appearance. Jury selection and jury trial are scheduled to begin on March 25, 2008 at 9:00 a.m.

Entered this 5th day of March, 2008.

**s\Harold A. Baker**

_____

HAROLD A. BAKER
UNITED STATES DISTRICT JUDGE